## PAYNE *v.* STATE.

### . Opinion delivered July 1, 1899.

1. EVIDENCE—MINUTES OF EXAMINING COURT.—It was not error to refuse to permit minutes of evidence taken before the examining court to be read for the purpose of impeaching the testimony of a witness. (Page 546.)

2. NEW TRIAL—MISCONDUCT OF JURY.—A new trial will not be granted in a felony case because the bailiff in charge of the jurors, as well as some of the jurors, drank intoxicating liquors, and because some of the jurors were separated from their fellows, if the trial court found from the evidence that the verdict was pure, and it appears affirmatively that there was no proof to justify a different verdict. (Page 548.)

Appeal from Lee Circuit Court.

HANCE N. HUTTON, Judge.

*Jas. P. Brown*, for appellant.

The evidence does not justify the verdict. It was error for the court to refuse to allow the witness, Roach, to be impeached by the written minutes of the proceedings in the ex-

amining court.   10 L. R. A. 696.   Where the jury is allowed
to separate, the burden is on the state to show that they were
not improperly influenced.   40 Ark. 454, 471.

*Jeff Davis*, Attorney General, and *Chas. Jacobson*, for ap-
pellee.

Appellant was not prejudiced by the court's refusal to ad-
mit the minutes of Roach's testimony.   A juror cannot be used
to impeach his own verdict.   13 Ark. 317; 15 Ark. 403; 29
Ark. 293; 35 Ark. 109; 59 Ark. 132.   Misconduct of a jury,
to be ground for a new trial, must occur after the cause is
submitted to them, and while they are deliberating.   62 Ark.
543; 57 Ark. 1; 44 Ark. 115; 40 Ark. 454.

WOOD, J.   This is an appeal from a conviction of murder
in the second degree.   The first, second and third grounds of
the motion for new trial are that the verdict was contrary to
the law and the evidence.   No objection is urged to the charge
of the court.   There is some conflict in the evidence as to par-
ticular circumstances of the fatal rencounter, but we are con-
vinced, from a careful reading of the evidence as set forth in
the transcript, that it is legally sufficient to support a verdict
for murder in the second degree, and no useful purpose can be
accomplished by setting it out and discussing the facts at length.

The fourth ground sets up error in the refusal of the court
to permit the reading of the minutes of the evidence taken
before the examining court.   This was sought for the purpose
of contradicting the evidence of a certain witness.   The min-
utes were identified by the examining magistrate as the testi-
mony of witness sought to be impeached, which was reduced
to writing and signed by the witness in the presence of the
magistrate.   The testimony, however, was reduced to writing
by a clerk of the magistrate.

The ruling of the court was correct.   If it be conceded
that the minutes were properly identified, still it was not proper
to prove what the testimony of a witness was before an exam-
ining court by reading the minutes of such testimony reduced
to writing and signed by the witness.   The proper method of
proving such testimony is to call a witness who heard it, and

let him testify as to the facts. The magistrate before whom the testimony was taken, the clerk who took it down, or any other witness who was present and heard it, is competent for the purpose. The witness, called for the purpose of showing the contradiction in the testimony of the witness sought to be impeached, must give his own knowledge or memory of what the testimony of the witness was before the examining court. The minutes may be used only for the purpose of refreshing the memory. The reason for this is obvious under our present statute, which is as follows: "The magistrate in the minutes of the examination shall state the name and place of residence of each witness, and shall make a general statement of the substance of what was proved, and file the same with the proceedings." Sand. & H. Dig. § 1997. This court, in *Shackleford* v. *State*, 33 Ark. 539, said concerning this statute: · "That the object of making such statement is not that it shall be used as evidence is obvious, and it can make no difference, as to the admissibility of the proof of the evidence before the examining court, that the substance of it was taken down, as in this case, or the statement fuller than required by the statute, for it would not be superior to oral proof."*

True, in *Atkins* v. *State*, 16 Ark., at page 588, this court uses this language: "It may be remarked that if Powell made a statement upon the final trial differing from that made by him before the examining magistrate, and his testimony before the examining court was reduced to writing, it should have been produced for the purpose of contradicting him, as it would be the best evidence for that purpose. The prisoner could not introduce secondary evidence, without showing that it was not in his power to produce the statement of the witness as reduced to writing by the magistrate." There is no conflict in these decisions when the statutes under which they were respectively rendered are considered. The statute under which *Atkins* v. *State*, *supra*, was decided provides as follows: "The evidence given by the several witnesses examined shall be reduced to writing by the magistrate, or under his direction, and signed by the witnesses respectively." Gould's Dig. ch. 52, § 40. The difference in the

---

*See, *contra*, *Dolan* v. *State*, 40 Ark. 461.—REPORTER.

two statutes is obvious, and makes the difference in the decisions. In the latter case the evidence itself of the witnesses is reduced to writing and signed by the witnesses. In the former—our present statute—only a general statement of the substance of what was proved is made by the magistrate. The present statute does not require the evidence of witnesses before an examining court to be reduced to writing and signed by them, as formerly, when *Atkins* v. *State* was decided. Iowa has a statute making it the duty of the grand jury to appoint a clerk "who must take and preserve the minutes of the proceedings and of the evidence given before it." Code Io. § 4275. Also a statute (sec. 4241 of the code) which requires the magistrate to write or cause to be written out the substance of the testimony only, almost identical with ours. The supreme court of Iowa, in passing on a case where the question was whether such minutes could be used as impeaching evidence, said: "But the minutes of a witness' testimony before a grand jury, and the substance of his testimony taken before an examining magistrate, are in no proper sense the writing or the act of the witness. * * * Unlike a deposition or affidavit, they do not purport to give statements of fact in full, but are what the law requires, mere "minutes." They are often taken down by persons wholly inexperienced in reducing the language of others to writing. * * * What we have said in regard to the evidence taken before the grand jury applies with equal force to the evidence taken in preliminary examination. * * * It is not required to be read over to the witness, and is but the act of the magistrate or his clerk. Excluding the written minutes or substance of the evidence from being introduced does not prevent an impeachment. * * * An examining magistrate, or his clerk, or any person who heard the testimony, may be called for the same purpose." Accordingly, it was held that the minutes should be excluded. *State* v. *Hayden*, 45 Io. 11; *State* v. *Adams*, 78 Io. 292.

The fifth ground for a new trial alleges misconduct of the jury in separating from each other, contrary to the instructions of the court, "whereby the interests of the defendant, his life and liberty, were subject to great peril." The sixth charged that

the deputy sheriff, in charge of the jury, "became grossly in-
toxicated with liquor, and his conduct at the hotel where he had
said jury was so grossly improper, on account of said intoxica-
tion, as to greatly disturb the proprietor and his family, which
said conduct of said deputy "was seriously and grossly unjust
to defendant, and greatly imperiled his interests of life and lib-
erty in this cause."

We will consider both of these grounds together. There
is testimony tending to prove that on Tuesday evening, April
4th, after the jury had been impaneled and the opening state-
ments made, the jury were placed in charge of John Simms, a
deputy, who, as well as the jury, was properly admonished by
the court, as the law directs, and the court thereupon adjourned
for the day. During Tuesday night, the deputy sheriff, as well
as some of the jurors, are shown to have drunk intoxicating
liquor to the extent of becoming drunk or under its influence,
and some of the jurors separated from their fellows. There
was proof, on the contrary, going to show that neither, the of-
ficer having the jury in charge nor any member of the jury was
in the least intoxicated or under the influence of liquor. Also
going to show that the jury were not subjected to any improper
influence, and that none of the jurors, while temporarily separ-
ated from their fellows, conversed with any one about the case,
or was otherwise guilty of any misconduct. All these matters
were submitted, upon the evidence pro and con, to the trial
court, who pronounced the verdict pure, and we cannot, under
the rule established by this court in *Dolan* v. *State*, 40 Ark.
454, say that the verdict is impeached for improper conduct.
This, according to that case, is the real test. Chief Justice
English, after an exhaustive review of the authorities, con-
cluded by a quotation from Mr. Wharton on Criminal Law, §
3111, which, in part, is as follows: "Such misconduct on the
part of the jury certainly deserves strong condemnation and
punishment, * * * but this is a matter entirely apart
from the question of setting aside the verdict when its fairness
is not impeached." This was the law for that case, and, under
the facts, must rule this. But each case must depend upon its
own peculiar facts and circumstances. Were we convinced that

the doctrine were otherwise than as announced in *Dolan* v. *State*, we would not think of overruling it in a case like this, where we are satisfied that the verdict is fully sustained, both as to the guilt and the degree of the crime, and that there is no proof to justify a different conclusion.

Inasmuch as such a large discretion is vested in the trial courts in passing upon questions of this character, we cannot refrain from the suggestion that a proper charge from the trial judge to the officer and jurors to abstain from the use of intoxicating liquors during the progress of trials of this magnitude, followed up by condign punishment in cases of disobedience on their part,would, in our opinion, effectually suppress the pernicious practice, and this is the only way it can be done.

A majority of the judges think the purposes of justice, under all the circumstances of this case, will be subserved by imprisonment for fifteen years in the penitentiary, and the judgment is modified to that extent, and in other respects affirmed.

BATTLE and HUGHES, JJ., did not participate.

