HYDRICK *v.* STATE.

Opinion delivered March 18, 1912.

1. APPEAL AND ERROR—CONCLUSIVENESS OF JURY'S FINDING.—Findings of fact made by a jury are conclusive, and their verdict will not be disturbed if there is any substantial evidence upon which it is founded. (Page 7.)

2. SAME—AMENDMENT OF BILL OF EXCEPTIONS.—Where any testimony given during the progress of a criminal trial or on the hearing of a motion for new trial has been omitted from the bill of exceptions, it may, by *nunc pro tunc* order, be amended by incorporating such omitted testimony therein. (Page 8.)

3. SAME—AMENDMENT OF BILL OF EXCEPTIONS—EFFECT OF DEFENDANT'S ABSENCE.—Where the accused in a felony case, while out on bond, was notified that application would be made to the court to amend the bill of exceptions by *nunc pro tunc* order, and voluntarily absented himself, and it appears that he was represented by counsel and lost no advantage by his absence, the record as amended can not be impeached because made in his absence. (Page 10.)

4. NEW TRIAL—MISCONDUCT OF JURY.—When any misconduct of a jury is shown in a felony case whereby the jury may have been influenced to the defendant's injury, the presumption is against the integrity of the verdict; but when the State shows that no prejudical effect was exerted over the jury, the purity of the verdict is established. (Page 10.)

5. SAME—QUOTIENT VERDICT—EVIDENCE.—The mere fact that after the jury returned their verdict a paper was found in the jury room with figures thereon is insufficient to prove that the verdict was arrived at by lot. (Page 11.)

6. TRIAL—INSTRUCTION AS TO REASONABLE DOUBT.—Where the court instructs the jury as follows: "If you have a reasonable doubt of the defendant's guilt upon the testimony in the whole case, he is entitled to an acquittal," it was not error to refuse an instruction to the effect that each juror must be satisfied of defendant's guilt beyond a reasonable doubt. (Page 11.)

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; affirmed.

*Stuckey & Stuckey* and *Ira P. Mack,* for appellant.

1. The judgment should be reversed for misconduct of the jury in being improperly influenced in having and reading

the article in a newspaper highly prejudicial to an impartial trial. Clark, Cr. Pro., § 179, p. 474; 59 S. E. 249; 86 Pac. 1100; *Id.* 889; 61 N. W. 179; 105 Fed. 371; 29 Ark. 248; 44 Ark. 118; 57 *Id.* 8; 5 Pac. Co. Rep. 236; 12 Phil. 576; 71 Miss. 82; 12 Pac. 272; 37 *Id.* 207; 2 O. St. 54; Kirby's Dig., § 2393-5.

2. Instruction No. 1, asked by the defendant, should have been given on the question of reasonable doubt. 89 Miss. 810; 57 Iowa 15; 2 Thompson on Trials, § 2495; 103 Ala. 94.

3. The verdict was determined by lot, and the testimony of Bob Dupin, which was not in rebuttal, was prejudicial.

4. The *nunc pro tunc* order amending the bill of exceptions should not have been entered. Kirby's Dig., § 4431, sub. 3; 87 Ark. 439; 86 S. W. 822; 102 Wis. 378; 28 So. 640; 30 Ala. 188; 82 *Id.* 257; 3 So. 30; 120 Ala. 459; 24 So. 929; 1 Black on Judg. § 132; 93 Ark. 237; 31 N. E. 670; 52 O. St. 487; 56 Mo. 304; 67 Ala. 333; 162 Ill. App. 166.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. The bill of exceptions was properly amended by *nunc pro tunc* order. 78 Ark. 228; 25 *Id.* 588; 35 *Id.* 118; 93 *Id.* 168; 98 U. S. 145; 73 Ark. 315; 63 *Id.* 504; 45 *Id.* 165 Defendant was represented by counsel; it was his own fault that he was absent, and his absence was nonprejudicial. 73 Ark. 315; 63 *Id.* 504; 45 *Id.* 165.

2. The *prima facie* case of improper influence of the jury is overcome by the testimony. 44 Ark. 118; 57 *Id.* 8; 29 *Id.* 254; 95 *Id.* 428.

3. Instruction No. 1 was properly refused. 81 Ark. 20.

FRAUENTHAL, J. The defendant, I. P. Hydrick, was indicted for the crime of murder in the first degree, charged with killing one Lee Mercing on July 22, 1911. He was convicted of the crime of murder in the second degree, and his punishment fixed at eleven years' imprisonment in the State penitentiary. In his motion for a new trial, the defendant assigned a number of errors on account of which the judgment of conviction should be reversed, but on this appeal his counsel have only pressed the following specially upon our attention: (1) On account of the misconduct of the jury, resulting in their being improperly influenced to his prejudice; (2) because

the verdict had been decided by lot; (3) because the court erred in refusing an instruction asked by him.

The defendant was engaged in a small grocery business in the city of Newport, and the deceased resided a few miles from that city on a farm owned by one Edwards. About two days before the homicide was committed, deceased and Edwards were in the city of Newport, and on that occasion defendant and deceased had a difficulty, in which the State claimed that defendant had drawn a knife upon deceased, and defendant claimed that deceased had assaulted him with a steel axle. The defendant had a prosecution instituted before a justice of the peace against deceased, growing out of said difficulty, and the day of trial was set for the following Saturday. On that day deceased was tried and discharged.

The testimony on the part of the State tended to prove that on the afternoon of the same day defendant borrowed a double-barreled shotgun and endeavored to buy some buckshot from a dealer in ammunition, but, the dealer not having buckshot, he obtained other large shot and took the loaded gun to his store. About 9 o'clock of that night, the deceased passed the defendant's store and stopped in front of it for a moment, looking in, when the defendant shot him with the gun, from the effects of which he died in probably twenty or thirty minutes thereafter. The testimony on the part of the State tended to prove further that at the time of the shooting deceased had walked along the sidewalk in front of the store with his hands extended by his side, and nothing in them, and that he was making no demonstration of any kind at the time the fatal shot was fired.

The testimony on the part of the defendant tended to prove that on the day of the killing he met deceased, who struck him with his fist, without excuse or justification, and that he was later told that deceased had threatened to injure him, and on that account he had secured the gun. The defendant testified that at the time of the killing deceased had come into the front part of the store with pistol in hand, and by word threatened and by act made demonstration to kill him; that he then fired the gun to protect himself from deceased.

Immediately after being shot, the deceased crossed the street to a store on the opposite side and there died. On the

part of the defendant, there was testimony tending to prove that while deceased was lying on the outer porch of said store a pistol was found near him, and presumably his pistol.   The State introduced testimony tending to show that no pistol was seen at the store where the deceased had fallen.

We have here narrated very briefly the testimony showing the manner in which the homicide was committed, and do not deem it necessary to set it out in further detail.   We have fully and carefully examined all the testimony, and we are of the opinion that there was evidence adduced upon the trial which was sufficient to sustain the verdict returned by the jury.

In the original transcript which was lodged in this court, it appears that in his motion for a new trial the defendant assigned as one of the grounds therein that from the misconduct of the jury he had not received a fair and impartial trial.   He stated in said motion that after the case had been finally submitted to the jury for the rendition of their verdict, and while they were deliberating thereon, the jurors read an article in a newspaper published in the city of Newport.   This article was set out, and it appears therefrom that it was a narration of the proceedings at the trial of this case, and in effect stated that the State had made out against the defendant a very strong case of murder; and that, while the jury had not as yet agreed upon a verdict, it was the general opinion that the defendant would be convicted of murder in the second degree   Without detailing the contents of this article, it is sufficient to say that it is conceded by the State's attorney that the reading thereof by the jury while deliberating on the verdict made out a *prima facie* case of improper influence and misconduct, calling for a new trial.   Attached to the motion for new trial was the affidavit of one W. D. Sprigg, the bailiff in charge of the jury, indicating that a juror had read said article.

Thereafter, the State's attorney sued out a writ of certiorari from this court in order to correct the record by obtaining a *nunc pro tunc* order of the circuit court showing that upon the hearing of the motion for new trial evidence was adduced by the State showing that no juror had read said article, and that the jury was subjected to no improper influence, and was guilty of no misconduct.   Thereupon, the prosecuting attorney filed in the circuit court a petition for a *nunc pro tunc* order to correct

said bill of exceptions and record in this particular, by having this omitted evidence incorporated therein. In his petition, the prosecuting attorney stated that at the hearing of said motion for new trial there was introduced the testimony of four jurors and of two bailiffs, one of whom was said Sprigg, whose affidavit was attached to the defendant's motion for new trial. The testimony of each of these witnesses was set out in full in said petition. To this petition the defendant filed a response, in which he admitted that the testimony of said witnesses set out in the petition for a *nunc pro tunc* order had been taken upon the hearing of the motion for new trial, and that such testimony was correctly set out in the petition. The response was signed and duly verified by the defendant, who appeared in open court, and was then notified that the hearing of the petition would be set for a day then named, and he and his attorneys were directed to then be present.

It appears that the defendant was out upon bail pending the appeal which he had taken to the Supreme Court. On the day set for the hearing of the petition, defendant did not appear, and the court set the hearing thereof for another day, notifying defendant's attorneys and directing them to have him present on that day. On that day the defendant again failed to appear, and the court ordered the issuance of an attachment for defendant, and set the hearing for another day. On the day thus set for the hearing of the petition, defendant failed to appear and the sheriff reported that he could not be found in the county, but the attorneys for defendant were present in court. Thereupon the court proceeded to hear said petition for a *nunc pro tunc* order. It found that at the hearing of the motion for new trial the testimony of the four jurors and two bailiffs was given relative to the alleged misconduct of the jury, and that the evidence given by them was correctly set out in said petition filed by the prosecuting attorney, and that this evidence was a part of the proceedings actually had in the case, and should have been incorporated in the bill of exceptions, from which it was inadvertently omitted. Thereupon the court ordered and adjudged that the record be amended in that particular, and entered a *nunc pro tunc* order to that effect.

It is urged by counsel for defendant that the court erred in making said *nunc pro tunc* order, for the reason that when the

bill of exceptions was signed by the trial judge the attention both of the judge and the prosecuting attorney was directed to the fact that this alleged evidence was not incorporated therein. It is contended that at the time the bill of exceptions was signed, it was not determined by the trial judge that the omitted evidence should be incorporated therein, and on this account it could not be corrected by incorporating therein a matter which was not passed upon and determined to be a part thereof. In other words, it is insisted that the original bill of exceptions represents the entire action taken by the trial judge at the time he signed it, and on this account no further action could now be taken which was not in contemplation of the trial judge at the time he signed the bill of exceptions. But the bill of exceptions is only a vehicle to bring into the record the matters and proceedings happening during the trial. When duly signed and filed, it becomes a part of the record. It presents the testimony given and the matters done at the trial, and therefore, if such testimony actually given, or other matters done at the time of the trial, have been omitted from it, the bill of exceptions can be corrected by incorporating such testimony or other matters. The bill of exceptions, like any other part of the record, should speak the truth, and, like any other part of the record, it may be amended so as to make it speak the truth. The entries in the bill of exceptions should correspond with what was actually done. Hence, if anything has been omitted from it which is properly a part of it, but fails to be incorporated in it, through negligence of the attorneys or inadvertence of the trial judge, then the omission may be supplied by amendment made after the term. This is the uniform rule of this court relative to proceedings in civil cases. *Hershey* v. *Baer*, 45 Ark. 240; *St. Louis & N. A. Ry. Co.* v. *Bratton*, 93 Ark. 234, and cases there cited.

It has also been repeatedly held by this court that the record of the circuit court may be amended in criminal as well as civil cases. *Binns* v. *State*, 35 Ark. 118; *Sweeney* v. *State*, 35 Ark. 585; *Goddard* v. *State*, 78 Ark. 226; *Bowman* v. *State*, 93 Ark. 168.

It follows, therefore, that if any testimony given during the progress of the trial or the hearing of the motion for new trial has been omitted from the bill of exceptions which has been

signed, filed and made a part of the record, such part of the record as is presented by the bill of exceptions may, by *nunc pro tunc* order, be amended by incorporating such omitted testimony therein.

We do not think that the court was deprived of the power to make this *nunc pro tunc* order by reason of the absence of the defendant. The order could be made in defendant's absence after due notice had been given to him of the time of the hearing and an opportunity to be present. He was present at the time the matter was first taken up by the court, and in open court filed his response o the petition asking for a *nunc pro tunc* order. He was out on bond, and was notified to be present at a subsequent day named, and repeated efforts were made therea'ter to secure his presence. He was absent from the hearing of said petition voluntarily, and it would appear that he was absent intentionally. In addit'on to this, it clearly appears that the defendant was not injured, and lost no advantage, by his absence. In the response, duly signed and verified by the deendant himself, he admitted all the findings of fact made by the court, and it necessarily followed that the record should be amended in conformity with such findings. The record as amended can not be impeached or avoided because it was made under these circumstances in the absence of the defendant. *Polk* v. *State,* 45 Ark. 165; *Mabry* v. *State,* 50 Ark. 492; *Gore* v. *State,* 52 Ark. 285; *Bond* v. *State,* 63 Ark. 504; *Darden* v. *State,* 73 Ark. 315.

The record as amended shows that the jury had been taken to a hotel in Newport for breakfast, and while waiting in the lobby one of the jurors picked up from a table the newspaper in which was the article complained of. As soon as he noticed that the article referred to the case on trial, the juror, without reading it, handed the paper to the bailiff. This testimony was sufficient to warrant the court in finding that none of the jurors read this article, and therefore could not have been influenced by it. When any misconduct of a jury is shown whereby they may have been influenced to the injury of the defendant, the presumption is against the integrity of the verdict. It then devolves upon the State to show by evidence that no prejudicial influence was exerted over the jury. When that is done, the purity of the verdict is established. *Thompson* v. *State,* 26

Ark. 323; *Dolan* v. *State,* 40 Ark. 454; *Vaughan* v. *State,* ·57 Ark.
8; *Payne* v. *State,* 66 Ark. 545; *Frame* v. *State,* 73 Ark. 501.

It is also urged that the verdict was decided by lot. This
fact may be shown by an examination of the jurors themselves,
as well as by other evidence. Kirby's Digest, § § 2422, 2423.
But we do not think that there was any showing made in this
case that the verdict was arrived at by lot. An affidavit was
made by one of the attorneys for defendant that immediately
after the jury had returned their verdict into court he went into
the jury room and found on the floor a paper with figures
thereon and a calculation made thereof. This was all the
testimony adduced relative to this matter, and we do not think
that it was sufficient to show that any member of the jury had
made these figures or that the jurors had agreed that the amount
of punishment fixed in the verdict was determined by a "quo-
tient verdict" under any agreement to be bound thereby.
*Williams* v. *State,* 66 Ark. 264.

It is finally contended that the court erred in refusing to
give to the jury at the request of the defendant an instruction
which in substance stated that each individual member of the
jury must be satisfied beyond a reasonable doubt of the defend-
ant's guilt before he can under his oath consent to a verdict
of guilty; that each juror should feel the responsibility resting
upon him as a member of the jury, and should realize that his
own mind must be convinced beyond a reasonable doubt of the
defendant's guilt before he can consent to a verdict of guilty.
In the instructions which the court gave to the jury, it had fully
instructed them relative to the question of reasonable doubt.
In several instructions it told the jury that they were required
to find the defendant guilty from the evidence beyond a reason-
able doubt before they would be warranted in finding him guilty
of any offense, and further instructed them: "If you have a
reasonable doubt of the defendant's guilt upon the testimony
in the whole case, he is entitled to an acquittal." These in-
structions were addressed to the jury and to each member
thereof. Each member of the jury must necessarily have under-
stood therefrom that he himself must be satisfied by the evi-
dence beyond a reasonable doubt of the defendant's guilt before
he was justified in consenting to a verdict of guilty. We are

of the opinion, therefore, that the defendant was not prejudiced by the refusal to give the instruction asked.

Upon an examination of the whole record, we find no prejudicial error which was committed in the trial of this case. The judgment is accordingly affirmed.